SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| FLAGSTAFF AFFORDABLE HOUSING LIMITED PARTNERSHIP, an Iowa limited partnership, | ) Arizona Supreme Court ) No. CV-09-0117-PR ) |
| | ) Court of Appeals |
| Plaintiff/Appellant, | ) Division One |
| | ) No. 1 CA-CV 07-0743 |
| v. | ) |
| | ) Maricopa County |
| DESIGN ALLIANCE, INC., an Iowa corporation, | ) Superior Court ) No. CV2006-005266 |
| | ) |
| Defendant/Appellee. | ) |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Ruth H. Hilliard, Judge

**REVERSED AND REMANDED**

_____

Opinion of the Court of Appeals, Division One
221 Ariz. 433, 212 P.3d 125 (App. 2009)

**VACATED**

_____

TIFFANY & BOSCO, P.A.                                    Phoenix
    By   Robert A. Royal
         Chad A. Hester
Attorneys for Flagstaff Affordable Housing Limited
Partnership

RENAUD COOK DRURY MESAROS, PA                            Phoenix
    By   Denise J. Wachholz
Attorneys for Design Alliance, Inc.

FOLK & ASSOCIATES, P.C.                                  Phoenix
    By   P. Douglas Folk
         Heather K. Seiferth
Attorneys for Amici Curiae American Council of Engineering
Companies of Arizona, AIA Arizona, and ASFE

_____

**B A L E S**, Justice

¶ 1     The "economic loss doctrine" bars plaintiffs, in certain circumstances, from recovering economic damages in tort. This Court has previously applied the doctrine only to products liability claims.  Today we apply the doctrine in a construction defect case and hold that a property owner is limited to its contractual remedies when an architect's negligent design causes economic loss but no physical injury to persons or other property.

**I.**

¶ 2     Because the superior court dismissed this action pursuant to Arizona Rule of Civil Procedure 12(b)(6), we assume the complaint's factual allegations to be true for purposes of our review.  *Cullen v. Auto Owners Ins. Co.*, 218 Ariz. 417, 419 ¶ 7, 189 P.3d 344, 346 (2008).

¶ 3     In 1995, Flagstaff Affordable Housing Limited Partnership ("Owner") contracted with Design Alliance, Inc. ("Architect") for the design of eight apartment buildings and a community center (the "apartments").  To qualify as a low income housing project, the apartments had to comply with the federal Fair Housing Act's accessibility guidelines.  Owner separately contracted with Butte Construction Company ("Contractor") for the construction of the apartments, which were completed in Flagstaff in 1996.

¶ 4    In 2004, the U.S. Department of Housing and Urban Development ("HUD") filed a complaint against Owner, alleging that the apartments violated the accessibility guidelines. After settling with HUD, Owner in 2006 sued Architect and Contractor, alleging they had breached their respective contracts and acted negligently.  Contractor was later dismissed from the action.

¶ 5    Architect moved to dismiss the complaint under Rule 12(b)(6).  Architect argued that the contract claim is barred by the statute of repose in Arizona Revised Statutes ("A.R.S.") section 12-552 (2003), which provides that no action based in contract may be brought against a person who "furnishes the design . . . of an improvement to real property more than eight years after substantial completion of the improvement." Architect argued that the negligence claim should be dismissed based on *Carstens v. City of Phoenix*, which held that the economic loss doctrine precludes tort recovery of economic losses in the "construction defect setting."  206 Ariz. 123, 125 ¶ 10, 75 P.3d 1081, 1084 (App. 2003).

¶ 6    Owner voluntarily dismissed the contract claim, but argued that the economic loss doctrine does not bar the claim for professional negligence.  Owner did not dispute that it seeks recovery only for economic losses, and acknowledged that *Carstens* applied the doctrine in a construction defect case.

Owner argued, however, that a claim for "professional negligence" is based on the special relationship between architects and their clients and therefore is excepted from the economic loss doctrine. The superior court dismissed the complaint.

¶ 7    The court of appeals reversed, holding that the economic loss doctrine does not bar negligence claims against design professionals. *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance*, *Inc.*, 221 Ariz. 433, 212 P.3d 125 (App. 2009). The court acknowledged that prior Arizona cases, such as *Carstens*, applied the doctrine to cases involving construction defects. *Id.* at 436 ¶ 10, 212 P.3d at 128. Distinguishing *Carstens,* the court stated that this case does not involve construction defects, but an architect's alleged negligent design. *Id.* at 436, 449 ¶¶ 11, 28, 212 P.3d at 128, 132. The court concluded that the economic loss doctrine should not apply because Owner's claim is based in tort, not contract, and reflects the special duties imposed on architects by law. *Id.* at 437, 441 ¶¶ 13-14, 30, 212 P.3d at 129, 133.

¶ 8    We granted Architect's petition for review because the application of the economic loss doctrine in this context is an issue of first impression and statewide importance. We have jurisdiction under Article 6, Section 5(3) of Arizona's Constitution and A.R.S. § 12-120.24 (2003).

4

## II.

### A.

¶ **9** Architect argues that the superior court properly dismissed the complaint because Owner alleges only economic loss; the economic loss doctrine applies in construction cases and precludes tort recovery for such losses absent personal injury or damage to other property; and the doctrine should apply to claims against not only contractors but also architects and other design professionals. The scope of the economic loss doctrine presents a legal issue that we review de novo. *See Dressler v. Morrison*, 212 Ariz. 279, 281 ¶ 11, 130 P.3d 978, 980 (2006) (applying de novo review to legal issues underlying dismissal of complaint pursuant to Rule 12(b)(6)).

¶ **10** This Court has not addressed the economic loss doctrine since its decision in *Salt River Project Agricultural Improvement and Power District v. Westinghouse Electric Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984).[1] In the absence of other decisions by this Court, the court of appeals and the federal courts have reached conflicting conclusions regarding the application of the doctrine under Arizona law. *Compare Apollo*

---

[1] We subsequently abrogated *Salt River* to the extent it suggested that courts may grant summary judgment to a defendant who asserts an assumption of risk defense, *see Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 410-11 n.5, 111 P.3d 1003, 1010-11 n.5 (2005), an issue unrelated to the economic loss doctrine.

*Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 (9th Cir. 1995) (stating that *Salt River* reflects that Arizona applies the economic loss rule "broadly"), *with Evans v. Singer,* 518 F. Supp. 2d 1134, 1142-45 (D. Ariz. 2007) (stating *Salt River* "provided anything but" a broad reading of the rule); *compare also Carstens*, 206 Ariz. at 128 ¶ 21, 75 P.3d at 1086 (arguing that *Salt River* supports applying doctrine to bar homeowners' claim for economic losses from construction defects), *with Valley Forge Ins. Co. v. Sam's Plumbing, LLC*, 220 Ariz. 512, 515-16 ¶¶ 11-12, 207 P.3d 765, 768-69 (App. 2009) (arguing that *Carstens* misconstrued *Salt River*).

¶ **11**     We begin by clarifying terminology.  Courts and commentators have defined the economic loss doctrine in varying ways, which itself has created some confusion in the law.  *See* Eddward P. Ballinger & Samuel A. Thumma, *The Continuing Evolution of Arizona's Economic Loss Rule*, 39 Ariz. St. L.J. 535, 536-37 (2007) (noting confusion surrounding doctrine in various jurisdictions and stating cases do not define a "single, unified economic loss rule"); Dan B. Dobbs, *An Introduction to Non-Statutory Economic Loss Claims*, 48 Ariz. L. Rev. 713, 733 (2006) (concluding that it "seems impossible to formulate a single economic loss rule").  "Economic loss," as we use the phrase, refers to pecuniary or commercial damage, including any decreased value or repair costs for a product or property that

6

is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits. *See Salt River*, 143 Ariz. at 379-80, 694 P.2d at 209-10.

¶ **12** Some courts have stated that the economic loss doctrine "bars a party from recovering economic damages in tort unless accompanied by physical harm." *Carstens*, 206 Ariz. at 125 ¶ 10, 75 P.3d at 1083 (footnote omitted). This formulation of the doctrine, however, is overly broad. In many contexts, tort recovery is available for solely pecuniary losses. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 875 (9th Cir. 2007) (noting that "[t]ort law has traditionally protected individuals from a host of wrongs that cause only monetary damage"); *Evans*, 518 F. Supp. 2d at 1139. Moreover, describing the doctrine this way conflates two distinct issues: (1) whether a contracting party should be limited to its contract remedies for purely economic loss; and (2) whether a plaintiff may assert tort claims for economic damages against a defendant absent any contract between the parties. As explained below, we believe the economic loss doctrine is best directed to the first of these issues, and we use the phrase to refer to a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property.

7

¶ 13    Bearing these definitions in mind, we return to *Salt River.* There, an electric utility company asserted contract and tort claims against the seller of a control device that had allegedly malfunctioned and damaged the utility's turbine unit. This Court held that the utility could not recover in contract because the seller had, consistent with the Uniform Commercial Code, disclaimed certain warranties and otherwise limited its liability.  143 Ariz. at 374, 694 P.2d at 204.   The Court, however, rejected the seller's argument that the contractual provisions also precluded a tort claim for strict products liability.  *Id.* at 375, 381, 694 P.2d at 205, 211.

¶ 14    In the context of an alleged product defect, *Salt River* considered whether a plaintiff could seek tort recovery for economic losses related to the defendant's contractual performance.   In resolving this question, the Court noted the distinct policies served by tort and contract law.   Strict liability promotes product safety and spreads the costs of accidents.  *Id.* at 375-76, 694 P.2d at 205-06.  Contract law, in contrast, seeks to preserve freedom of contract and to promote the free flow of commerce.  *Id.* at 376, 694 P.2d at 206.  These goals are best served by allowing the parties to specify the consequences of a breach of their agreement.  *Id.* Accordingly, "[w]hen a defect renders a product substandard or unable to perform the functions for which it was manufactured, the

8

purchaser's remedy for disappointed commercial expectations is through contract law."  *Id.* at 376, 694 P.2d at 206.

¶ 15    The Court in *Salt River* acknowledged that most courts had held that economic loss resulting from a product defect (including damage to the product itself) is not recoverable in tort absent accompanying physical damage to other property or personal injury.  *Id*. at 379, 694 P.2d at 209.  *Salt River*, however, expressly declined to follow that majority rule and instead embraced a narrower, case-specific approach:

> Where economic loss, in the form of repair costs, diminished value, or lost profits, is the plaintiff's only loss, the policies of the law generally will be best served by leaving the parties to their commercial remedies.  Where economic loss is accompanied by physical damage to person or other property, however, the parties' interests generally will be realized best by the imposition of strict tort liability.  If the only loss is non-accidental and to the product itself, or is of a consequential nature, the remedies available under the UCC will govern and strict liability and other tort theories will be unavailable.

*Id.* at 379-80, 694 P.2d at 209-10 (footnote omitted).

¶ 16    Under *Salt River*, the economic nature of the loss is only one factor in a three-part test to determine whether tort remedies will be available:  a court must also consider whether the defect was "unreasonably dangerous" and whether the loss occurred in a "sudden, accidental manner."  *Id.* at 379, 694 P.2d at 209.  When these factors are present, *Salt River* allows a plaintiff to recover in tort for purely economic loss.  *See id.*

9

at 380-81, 694 P.2d at 210-11 (applying factors and holding utility could seek tort recovery of damage to turbine unit even if it was not a loss to "other property").

¶ 17     Thus, in the products liability context, *Salt River* declined to categorically bar tort recovery of economic losses. Instead, the Court reasoned that, "[e]ach case must be examined to determine whether the facts preponderate in favor of the application of tort law or commercial law exclusively or a combination of the two." *Id.* at 380, 694 P.2d at 210. Applying a narrow version of economic loss doctrine, *Salt River* held that the commercial purchaser in that case could assert a products liability claim against a commercial seller for economic losses for which the contract disclaimed liability.

### B.

¶ 18     This case involves alleged defects in a building rather than a defective product. Many other courts, and the parties here, have assumed that Arizona law also applies the economic loss doctrine to construction defect cases. The only opinion by this Court cited for this proposition is *Woodward v. Chirco Construction Co.*, 141 Ariz. 514, 687 P.2d 1269 (1984) — a case decided a few months before *Salt River*.

¶ 19     *Woodward*, however, concerned the limitations period for contract actions for breach of implied warranty, not the preclusion of tort claims. In that case, a couple contracted

10

with a builder for the construction and purchase of a residence. *Id.* at 515, 687 P.2d at 1270. After the closing, the soil subsided and caused extensive damage to the home. *Id.* The homeowners sued the builder alleging both negligence for failing to conduct a soil study and breach of the implied warranty of workmanlike performance and habitability. *Id.* The trial court dismissed the negligence claim for lack of proof of the relevant standard of care; it also dismissed the warranty claim as barred by the statute of limitations. The court of appeals affirmed the dismissal of the negligence claim but reversed the dismissal of the contract claim, holding that the six-year limitations period in A.R.S. § 12-548 applied. *Id.*

¶ 20 The builder petitioned for review, arguing that breach of an implied warranty is actionable only in tort, which generally has a two-year limitations period. *See id.* at 515, 687 P.2d at 1270. Rejecting this argument, this Court agreed with other jurisdictions holding that a home purchaser may sue both in contract for breach of the implied warranty and in tort for the builder's breach of the common law duty of care. *Id.* at 515-16, 687 P.2d at 1270-71. The Court stated:

> For example, if a fireplace collapses, the purchaser can sue in contract for the cost of remedying the structural defects and sue in tort for damage to personal property or personal injury caused by the collapse. Each claim will stand or fall on its own; a distinct statute of limitation applies to each.

11

*Id.* at 516, 687 P.2d at 1271.

¶ **21**     Although some courts have construed this language as approving the economic loss doctrine, *Woodward* did not do so. The Court was not asked to address the doctrine and did not discuss it.   Moreover, when later applying the economic loss doctrine in *Salt River*, the Court did not mention *Woodward*.

¶ **22**     Nor can this Court's remarks in *Woodward* about a plaintiff's potential claims in contract and tort be viewed as implicitly endorsing the economic loss doctrine.   *Woodward* stated that it agreed with *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo. 1983), which allowed a subsequent purchaser to assert negligence claims against a contractor for residential construction defects.   *Woodward*, 141 Ariz. at 516, 687 P.2d at 1271.   *Cosmopolitan Homes* rejected the argument that claims for recovery of economic loss sound exclusively in contract.   663 P.2d at 1044-45.[2]

¶ **23**     In short, *Woodward* does not resolve whether the economic loss doctrine should apply to construction defects. Although several opinions by the court of appeals have concluded

---

[2]     Subsequent Colorado decisions have reaffirmed *Cosmopolitan Homes* while declining to apply the economic loss doctrine to bar claims for negligence in home construction. *See, e.g., A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862 (Colo. 2005).   Since *Cosmopolitan Homes*, however, Colorado courts have applied the doctrine in construction defect cases not involving homes. *See Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

that the doctrine applies, those cases rely heavily on an interpretation of *Woodward* that we today reject. *See, e.g.*, *Carstens*, 206 Ariz. at 126 ¶¶ 11-12, 75 P.3d at 1084; *Colberg v. Rellinger*, 160 Ariz. 42, 44, 770 P.2d 346, 348 (App. 1988); *Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 444-45, 690 P.2d 158, 163-64 (App. 1984).

¶ 24    Nor does the fact that the doctrine applies to product defects necessarily establish that it should also apply to construction defects.    The economic loss doctrine may vary in its application depending on context-specific policy considerations.    To determine whether the doctrine should apply here, we must consider the underlying policies of tort and contract law in the construction setting.    *Cf. Salt River*, 143 Ariz. at 376, 694 P.2d at 206 (stating that purposes of tort and contract law should determine which law applies in products liability cases).

¶ 25    The contract law policy of upholding the expectations of the parties has as much, if not greater, force in construction defect cases as in product defect cases. Construction-related contracts often are negotiated between the parties on a project-specific basis and have detailed provisions allocating risks of loss and specifying remedies.    In this context, allowing tort claims poses a greater danger of undermining the policy concerns of contract law.    That law seeks

13

to encourage parties to order their prospective relationships, including the allocation of risk of future losses and the identification of remedies, and to enforce any resulting agreement consistent with the parties' expectations. *See, e.g.*, *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*, 881 P.2d 986, 993 (Wash. 1994).

¶ 26     Moreover, in construction defect cases involving only pecuniary losses related to the building that is the subject of the parties' contract, there are no strong policy reasons to impose common law tort liability in addition to contractual remedies.   When a construction defect causes only damage to the building itself or other economic loss, common law contract remedies provide an adequate remedy because they allow recovery of the costs of remedying the defects, *see Woodward*, 141 Ariz. at 516, 687 P.2d at 1271, and other damages reasonably foreseeable to the parties upon entering the contract.  *See Higgins v. Ariz. Sav. & Loan Ass'n*, 90 Ariz. 55, 63-64, 365 P.2d 476, 482-83 (1961) (adopting rule of *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), for identifying damages recoverable in contract).

¶ 27     The policies of accident deterrence and loss-spreading also do not require allowing tort recovery in addition to contractual remedies for economic loss from construction defects.  These considerations have less force when parties to a

14

site-specific construction contract have allocated the risk of loss and identified remedies for non-performance. *Cf. Salt River*, 143 Ariz. at 376, 694 P.2d at 206 (noting that contract law policy "is best served" by allowing "parties to limit the redress of a purchaser who fails to receive the quality of product he expected"). Moreover, although a homeowner's purchase of a mass-produced home might in some ways be analogous to a consumer's purchase of a product, even in this situation there is less reason to preserve tort remedies for purely economic loss. Arizona law allows home purchasers to bring contract claims for breach of the implied warranty of good workmanship and habitability even if they are not in privity with the builder. *See Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 245, 678 P.2d 427, 430 (1984).[3]

¶ **28** Given these considerations, we conclude that in construction defect cases, "the policies of the law generally will be best served by leaving the parties to their commercial remedies" when a contracting party has incurred only "economic loss, in the form of repair costs, diminished value, or lost profits." *Salt River*, 143 Ariz. at 379, 694 P.2d at 209. We

---

[3] In this respect, Arizona law differs from Colorado law. The subsequent purchaser in *Cosmopolitan Homes* could not maintain a contract action for breach of implied warranty because Colorado law allows such claims only by first purchasers. 663 P.2d at 1043. In this context, *Cosmopolitan Homes* held the economic loss doctrine should not preclude negligence claims by homeowners.

15

accordingly apply the economic loss doctrine and hold that a contracting party is limited to its contractual remedies for purely economic loss from construction defects.

¶ 29    In the construction context, the economic loss doctrine respects the expectations of the parties when, as will often be true, they have expressly addressed liability and remedies in their contract. Thus, the parties can contractually agree to preserve tort remedies for solely economic loss, just as they may otherwise specify remedies that modify common law recovery. *See Green v. Snodgrass*, 79 Ariz. 319, 322, 289 P.2d 191, 192 (1955) (noting that contract will control when it specifies remedies in event of breach). But if the parties do not provide otherwise in their contract, they will be limited to contractual remedies for any loss of the bargain resulting from construction defects that do not cause personal injury or damage to other property.

¶ 30    Applying the economic loss doctrine to construction cases also requires that we discuss two other aspects of the *Salt River* decision. First, *Salt River* identified certain requirements for the waiver of tort remedies, which is a separate question from whether the economic loss doctrine applies. *See* 143 Ariz. at 375, 385, 694 P.2d at 205, 215. *Salt River*'s requirements for an effective waiver do not determine whether a party is limited to contractual remedies for

16

purely economic losses resulting from construction defects. Instead, a party will be so limited unless the parties have provided in their contract for tort remedies.

¶ 31        *Salt River* also outlined a three-factor test for determining, on a case-specific basis, whether to apply the economic loss doctrine to claims involving a defective product. This approach allows tort recovery for purely economic losses if they result from an "accident" that poses unreasonable risks of harm to other property or persons.  *See Salt River,* 143 Ariz. at 380-81, 694 P.2d at 210-11.   This minority view has been criticized as being too unpredictable and allowing non-contractual recovery when a purchaser has only been deprived of the benefit of the bargain.  *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 869-70 (1986) (refusing to apply *Salt River*-type approach to products liability claim under admiralty law).

¶ 32        Whatever the wisdom of continuing to apply *Salt River*'s three-factor test in products liability cases, we decline to extend it to construction defect cases.  The economic loss doctrine appropriately applies in this context because construction contracts typically are negotiated on a project-specific basis and the parties should be encouraged to prospectively allocate risk and identify remedies within their agreements.  These goals would be undermined by an approach that

17

allowed extra-contractual recovery for economic loss based not on the agreement itself, but instead on a court's post hoc determination that a construction defect posed risks of other loss or was somehow accidental in nature. *Cf. Lincoln Gen. Ins. Co. v. Detroit Diesel Corp*., 293 S.W.3d 487, 492-93 (Tenn. 2009) (noting similar concerns in adopting *East River*'s majority approach in products liability); Restatement (Third) of Torts: Products Liability § 21 & cmt. d (1998) (adopting *East River* approach).

¶ 33    In sum, in the context of construction defects, we adopt a version of the economic loss doctrine and hold that a plaintiff who contracts for construction cannot recover in tort for purely economic loss, unless the contract otherwise provides.  The doctrine does not bar tort recovery when economic loss is accompanied by physical injury to persons or other property.

## c.

¶ 34    Consistent with the opinion of the court of appeals, Owner argues that even if the economic loss doctrine applies to construction defect cases against those who construct buildings, it should not apply to professional negligence claims based on an architect's design.

¶ 35    Owner argues that applying the economic loss doctrine would conflict with *Donnelly Construction Co. v.*

18

*Oberg/Hunt/Gilleland*, 139 Ariz. 184, 677 P.2d 1292 (1984).[4]  In *Donnelly*, a contractor relied on an architect's plans to prepare a bid for improvements to a school complex. *Id.* at 185, 677 P.2d at 1293.  After starting work, the contractor found the plans were in error, which increased the contractor's construction costs. *Id.* at 185-86, 677 P.2d at 1293-94.  The contractor later sued the architect to recover the increased costs, asserting claims for negligence, negligent misrepresentation, and breach of implied warranty. *Id.* at 186, 677 P.2d at 1294.  The architect argued that, because it had not entered into a contract with the contractor, it owed no duty and could not be liable on any of the claims. *Id.* at 187, 677 P.2d at 1295.

¶ 36      This Court held that lack of privity did not bar the claims. *Id.* at 187-89, 677 P.2d at 1295-97.  With regard to the negligence claim, the Court noted that "[d]esign professionals have a duty to use ordinary skill, care, and diligence in rendering their professional services," and that "an action in negligence may be maintained upon the plaintiff's showing that the defendant owed a duty to him, that the duty was breached, and that the breach proximately caused an injury which resulted

---

[4]    We subsequently rejected *Donnelly*'s reliance on foreseeability to determine the existence of a duty of care for purposes of tort law, *see Gipson v. Kasey*, 214 Ariz. 141, 144 ¶¶ 14-15, 150 P.3d 228, 231 (2007), an issue unrelated to the economic loss doctrine.

in actual damages." *Id.* at 187, 677 P.2d at 1295. The Court further explained, "[w]e only hold here that design professionals are liable for foreseeable injuries to foreseeable victims which proximately result from their negligent performance of their professional services." *Id.* at 188, 677 P.2d at 1296.

¶ 37    *Donnelly* thus held that a contractor had stated a claim for negligence to recover economic losses based on an architect's allegedly defective design. The architect did not argue that the contractor should be limited to its contractual remedies for economic loss; instead, the architect argued that the absence of a contract precluded all liability. Without discussing the economic loss doctrine, *Donnelly* correctly implied that it would not apply to negligence claims by a plaintiff who has no contractual relationship with the defendant.

¶ 38    Although some courts have applied the doctrine in that context, *see, e.g*, *Carstens*, 206 Ariz. at 127 ¶ 17, 75 P.3d at 1085; *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 243 (Utah 2009), we decline to do so. The principal function of the economic loss doctrine, in our view, is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to

20

contractual remedies for loss of the benefit of the bargain. These concerns are not implicated when the plaintiff lacks privity and cannot pursue contractual remedies. *See* Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 556 (2009) (concluding that when "established tort principles entitle a third party to protection under tort law for economic loss, an agreement to which the third party never assented should not be permitted to vitiate his or her right to tort remedies").

¶ 39 Rather than rely on the economic loss doctrine to preclude tort claims by non-contracting parties, courts should instead focus on whether the applicable substantive law allows liability in the particular context. For example, whether a non-contracting party may recover economic losses for a defendant's negligent misrepresentation should depend on whether the elements of that tort are satisfied, including whether the plaintiff is within the limited class of persons to whom the defendant owes a duty. *Cf. Donnelly*, 139 Ariz. at 189, 677 P.2d at 1297 (recognizing that defendants may be liable for pecuniary losses incurred by certain third parties based on defendant's negligent misrepresentations); Restatement (Second) of Torts § 552 (1977) (same).

¶ 40 Owner also argues that the economic loss doctrine should not apply because Architect breached duties imposed by

21

law. Although architects have common-law duties of care, this case illustrates that it is often difficult to draw bright lines between obligations imposed by law and those arising from contract. Architect's duties with regard to Owner's project existed only because of the contract between the parties. Architectural contracts generally include compliance with applicable building codes and other legal design requirements as an implied term. *See Howard v. Usiak*, 775 A.2d 909, 916 (Vt. 2001). Owner here alleges that Architect designed a building that did not conform to certain requirements of the federal Fair Housing Act; the complaint alleges that this conduct both breached Architect's contractual obligations and constituted professional negligence. Attempting to label claims by distinguishing between contractual and extra-contractual duties is an unduly formalistic approach to determining if plaintiffs like Owner should be limited to their contractual remedies for economic loss.[5]

¶ **41** Nor should the professional status of architects determine whether the economic loss doctrine applies in this

---

[5] Courts have looked to the source of duties in determining whether a tort action "arises out of contract" and thus qualifies for an award of attorney fees under A.R.S. § 12-341.01 (2003). *Barmat v. John and Jane Doe Partners A-D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987). Rather than extend *Barmat*'s approach here, we think application of the economic loss doctrine should rest on explicit consideration of the relevant tort and contract law policies. *See Salt River*, 143 Ariz. at 375-76, 694 P.2d at 205-06.

context.  The purposes of the doctrine are served by applying it to contracts entered by architects and design professionals, as other courts have recognized.  *See, e.g.*, *Terracon Consultants W., Inc. v. Mandalay Resort Group*, 206 P.3d 81, 83, 89 (Nev. 2009) (applying economic loss doctrine to negligence claims against design professionals).  Moreover, the fact that an architect, as a professional, has legally imposed duties of care does not displace the general policy concerns that parties to construction-related contracts should structure their relationships by prospectively allocating the risks of loss and identifying remedies.

¶ **42**     Owner further contends that applying the economic loss doctrine to architects would be contrary to public policy because it would reduce their incentives to properly design buildings.  Limiting the parties to their contractual remedies for economic losses related to design defects does not, however, eliminate incentives for due care.  The doctrine instead limits a party to contractual remedies when the injury is solely economic (including damage to the property that is the subject of the contract), but allows tort recovery if there is also physical injury to persons or other property.  This is no more contrary to public policy than are contractual provisions limiting a design professional's liability to the amount of fees received.  *Cf. 1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz.

200, 202-04 ¶¶ 9-21, 196 P.3d 222, 224-26 (2008) (rejecting argument that contractual liability limits in design professional contracts are contrary to public policy).

¶ **43** In a related argument, Owner maintains that architects should be treated differently than contractors for purposes of the economic loss doctrine because Arizona statutes regulate architects to protect the public. Contractors and architects are governed by different statutory requirements and administrative regulations. *Compare* A.R.S. §§ 32-1101–1107 (2008) (regulating contractors), *with* A.R.S. §§ 32-101–112, 121–131, 141–152 (2008 & Supp. 2009) (regulating architects). But this does not preclude applying the economic loss doctrine to claims against architects.

¶ **44** More relevant here are certain Arizona statutes governing actions involving construction defects. These statutes do not distinguish between contractors and architects, although they do draw distinctions that in some ways parallel the economic loss doctrine. For example, the statute of repose in A.R.S. § 12-552 generally provides that actions based in contract involving the design, engineering, or construction of improvements to real property must be brought within eight years. The statute applies to architects as well as contractors, but like the economic loss doctrine it does not apply to actions involving personal injury. *Id.* § 12-552(D).

24

Similarly, A.R.S. § 12-1363 (Supp. 2009) does not distinguish between architects and contractors in requiring notice and an opportunity to repair before plaintiffs can bring certain actions related to the "design, construction, condition or sale" of a dwelling. *Id.;* § 12-1361(7) (Supp. 2009) (defining "seller" as any person engaged in the business of designing, constructing, or selling dwellings). This statute, like the economic loss doctrine, does not apply to claims involving personal injury or damage to other property. *See* A.R.S. § 12-1366(A)(2) & (4) (Supp. 2009); c*f.* A.R.S. § 32-1159 (2008) (barring certain indemnity provisions in both construction contracts and contracts for architect-engineer professional services). In light of these provisions, we are not persuaded by Owner's arguments that Arizona statutes require distinguishing architects from contractors for purposes of the economic loss doctrine.

¶ 45    Finally, Owner argues that applying the economic loss doctrine to architects would imply that it also applies to other claims for professional negligence, such as claims for legal malpractice. This argument is not compelling. Lawyers owe fiduciary duties to their clients and generally are barred from entering agreements that prospectively limit their liability. *See* Ariz. R. Sup. Ct. 42, ER 1.8(h)(1); Dobbs, *supra*, at 727 (arguing that economic loss doctrine should not apply to claims

25

against lawyers and fiduciaries because "[w]hen you retain someone for the express purpose of being on your side, he cannot rightly contract to be your adversary instead or to be on your side but free to be negligent").

¶ 46    We do not hold that the economic loss doctrine applies to architects because they are professionals, but instead because the policy concerns that justify applying the doctrine to construction defect cases do not justify distinguishing between contractors on the one hand and design professionals, including architects, on the other. Our adoption of the economic loss doctrine in construction defect cases reflects our assessment of the relevant policy concerns in that context; it does not suggest that the doctrine should be applied with a broad brush in other circumstances. *Cf.* Ellen M. Bublick, *Economic Torts: Gains in Understanding Losses*, 48 Ariz. L. Rev. 693, 701 (2006) (noting that not all economic loss cases invoke the same interests or call for the same treatment).

## III.

¶ 47    Because the court of appeals found the economic loss doctrine inapplicable to Owner's negligence claim against Architect, we vacate the opinion below. In ruling on the motion to dismiss, the superior court did not apply the version of the economic loss doctrine we adopt today. The complaint refers to Owner's contract with Architect, but a copy of the contract is

26

not attached and is not otherwise included in the record. Although it seems unlikely that the contract would preserve tort remedies for purely economic loss, we will not make assumptions about its provisions. Instead, it is appropriate to reverse the judgment for Architect and to remand this case to the superior court for further proceedings.

 

 

_____
W. Scott Bales, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
A. John Pelander, Justice

27