IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| MIIDAS GREENHOUSES, LLC, an Arizona limited liability company; INVERNADEROS SANTA FE, S.A. DE C.V., a Mexican corporation, | ) ) ) ) ) | 2 CA-CV 2010-0073 DEPARTMENT B  O P I N I O N |
| Plaintiffs/Appellants, | ) ) |  |
| v. | ) ) |  |
| GLOBAL HORTICULTURAL, INC., a Canadian corporation and BERGER GROUP LTD., aka GROUPE BERGER, LTD., a Canadian corporation, | ) ) ) ) ) |  |
| Defendants/Appellees. | ) ) ) |  |

APPEAL FROM THE SUPERIOR COURT OF SANTA CRUZ COUNTY

Cause No. CV2005323

Honorable James A. Soto, Judge

VACATED AND REMANDED

Waterfall, Economidis, Caldwell, Hanshaw
  & Villamana, P.C.
  By D. Michael Mandig and Corey B. Larson                               Tucson
                                          Attorneys for Plaintiffs/Appellants


Goering, Roberts, Rubin, Brogna, Enos
  & Treadwell-Rubin, P.C.
  By Scott Goering and Elizabeth L. Warner                               Tucson
                                          Attorneys for Defendant/Appellee
                                                        Berger Group, Ltd.

Hazlett Law Firm
  By Carl E. Hazlett
Tucson
Attorney for Defendant/Appellee
Global Horticultural, Inc.

KELLY, Judge.

¶1        In this appeal from the trial court's grant of summary judgment in favor of Global Horticultural Inc. and Berger Group Ltd., appellants Miidas Greenhouses and Invernaderos Santa Fe argue the court erred in concluding the economic loss rule barred their tort claims in this action.  We agree and therefore vacate the court's judgment.

**Background**

¶2        "On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, 49 (App. 1998).  In 2003, Miidas Greenhouses, which sells products grown by Invernaderos Santa Fe, S.A. de C.V., (collectively "Miidas") purchased 720 bales of peat moss from Global Horticultural Inc.[1]  The peat moss was produced by Berger Group Ltd. Before the purchase, Demetrio Crisantes, who owns Invernaderos and is chief operating officer of Miidas, had met with a man named Benedictus Blom, president of Global, who informed him that Global could get Miidas a better price on peat moss than its current

[1]Global purchased the peat moss through a Canadian distributer, Specialties/Spécialités Robert Legault Inc.  Legault was dismissed from the case for lack of personal jurisdiction.

2

supplier. Blom had visited Miidas's facility and seen its operation, and he was aware of Miidas's intended use for the peat moss.

¶3        Miidas had used peat moss produced by Berger for several seasons leading up to September 2003. But, the peat moss purchased in 2003 was a different type than Miidas had used in the past. No one at Miidas, however, was aware that the 2003 peat moss was different. A few days after seeds were planted in the peat moss, they had not sprouted as they should have. Some plants sprouted, but they were deformed and "started drying out." All of Miidas's seeds and resulting crops were lost. Subsequent tests of the peat moss shipped to Miidas determined that it was "too acidic for vegetable seed germination and cultivation of seedlings" and was "hydrophobic, meaning that it lacked the native moisture content to enable it to absorb water."

¶4        Miidas then brought the instant action against Global and Berger, in which it asserted two contract claims against Global and product liability and negligent misrepresentation claims against both Global and Berger. Global filed a motion for summary judgment, arguing Miidas's tort claims were barred by the economic loss rule and Berger joined in that motion. The trial court agreed with Global and Berger that the economic loss rule barred Miidas's tort claims and granted their motion. After the court denied Miidas's motion for a new trial, it found no just reason for delay pursuant to Rule 54(b), Ariz. R. Civ. P., and entered judgment in favor of Global and Berger on Miidas's tort claims. This appeal followed.[2]

_____

[2]Noting "the trial court's use of language pursuant to Ariz. R. Civ. P. 54(b) in the judgment may not have been appropriate due to the voluntary dismissal without prejudice

3

**Discussion**

¶5 In several related arguments, Miidas argues the trial court erred in finding its tort-based claims were barred by the economic loss rule and in granting summary judgment in favor of Berger and Global on that basis. Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). A court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "On appeal from a summary judgment, we must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell*, 192 Ariz. 313, ¶ 8, 965 P.2d at 50. And, we review de novo whether the trial court properly applied the economic loss doctrine. *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, ¶ 9, 223 P.3d 664, 666 (2010).

¶6 "[T]he economic loss doctrine . . . precludes tort recovery for [economic] losses absent personal injury or damage to other property" and "limit[s] a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Id.* ¶¶ 9, 12. Miidas argues the trial court

---

of appellee Global Horticultural's counterclaim against appellant Miidas Greenhouses," we ordered supplemental briefing on this court's jurisdiction of this matter. Global advised that the counterclaim "has already been adjudicated" in a Canadian court, thereby resolving our concerns about the finality of the judgment.

erred in applying the economic loss rule in this case because the Berger peat moss it purchased from Global "damaged seeds and seedlings," which constituted "other property." It maintains that its seeds, which it did not purchase from Global "did not cease to be[] other property when they were placed in . . . the peat moss," but remained other property that was damaged by the appellees' product. Because the alleged defect in the peat moss did not result simply in the loss of the peat moss itself, but rather in the loss of Miidas's seeds and seedlings, it contends the economic loss rule does not apply.

¶7        First, we must address Berger's and Global's claims that Miidas failed to allege damage to its seeds. Berger and Global maintain that Miidas "never . . . disclosed that [it] sought recovery for the cost of seeds," did not "claim damages for recovery for the damaged seeds" in its complaint, and "seek[s] to recover the benefit of an allegedly breached bargain . . . and lost profits." In its complaint, however, Miidas alleged damage to its seeds several times. And, it disclosed several documents for use at trial related to the costs of the seeds and its "[c]ost[s] of production," which presumably would include seed costs. *Cf. Hayden Bus. Ctr. Condos. Ass'n v. Pegasus Dev. Corp.*, 209 Ariz. 511, ¶ 29, 105 P.3d 157, 162 (App. 2005) (imposing economic loss rule where, inter alia, plaintiff "did not disclose any harm to personal property or personal injury" in disclosure statement or elsewhere), *disapproved on other grounds by Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, 218 Ariz. 574, n.3, 190 P.3d 733, 736 n.3 (2008). And, contrary to Global's and Berger's allegations that its prayer for relief specified only its lost profits, Miidas requested "compensatory damages in an amount to be proven at trial, but in no event less than 3.2 million dollars US." This request can be read to

5

encompass not only lost profits, but the lost seeds for which damage was alleged elsewhere in the complaint. Thus, we determine Miidas adequately pled damage to "other property."

¶8 We now turn to the question of whether or not the economic loss rule should apply here. In *Flagstaff*, 223 Ariz. 320, ¶ 14, 223 P.3d at 667, our supreme court summarized the policy bases for the application of the economic loss rule it had set forth in *Salt River Project Agricultural Improvement & Power District v. Westinghouse Electric Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984). It explained that different policies are served by tort and contract law and that those policies should serve as the bases for determining when a party should be entitled to seek tort remedies and when the party should be limited to contract remedies. *Flagstaff*, 223 Ariz. 320, ¶¶ 14, 24, 223 P.3d at 667, 669.

> Strict liability promotes product safety and spreads the costs of accidents. Contract law, in contrast, seeks to preserve freedom of contract and to promote the free flow of commerce. These goals are best served by allowing the parties to specify the consequences of a breach of their agreement. Accordingly, "[w]hen a defect renders a product substandard or unable to perform the functions for which it was manufactured, the purchaser's remedy for disappointed commercial expectations is through contract law."

*Id.* (citations omitted, alteration in *Flagstaff*), *quoting Salt River*, 143 Ariz. at 376, 694 P.2d at 206.

¶9 Pursuant to our supreme court's dictates in *Salt River*, in determining whether tort law or contract law should be applied in a products liability case, we must keep these competing policies in mind and consider three factors: "1) the nature of the

6

product defect, 2) the manner in which the loss occurred, and 3) the type(s) of loss or damage that resulted." 143 Ariz. at 376, 380, 694 P.2d at 206, 210. Miidas argues that "*Flagstaff* signals that *Salt River*'s three-part test will soon no longer be the law in Arizona products cases." Although we acknowledge the *Flagstaff* court's negative comments about the *Salt River* test, we agree with Global that despite these comments, *Flagstaff* did not overrule *Salt River*. And, so long as our supreme court has not overruled its decision in *Salt River*, we are bound to follow it. *See Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, ¶ 19, 214 P.3d 1019, 1024 (App. 2009).

¶10        We turn then to the first of the *Salt River* factors, the nature of the product's defect.

> The gist of a products liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, *through a hazardous product*, to an unreasonable risk of injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the appropriate set of rules when an individual wishes a product to perform a certain task in a certain way, or expects or desires a product of a particular quality so that it is fit for ordinary use.

*Salt River*, 143 Ariz. at 377, 694 P.2d at 207, *quoting Pa. Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1169 (3d Cir. 1981). Thus, "[w]here the potential for danger to person or property is absent, tort principles need not be invoked because the safety incentive policy of tort liability is not implicated." *Id.*

7

¶11       As Miidas contends, the peat moss here "pos[ed] an unreasonable risk of harm to seeds and seedlings."[3] Berger contends, however, that "[i]t is more than a stretch for [Miidas] to attempt to characterize this case as one involving an unsafe, dangerous product, capable of causing harmful or accidental injuries to the public." Likewise, Global asserts that "[p]eat moss is simply not hazardous." But, although the peat moss clearly did not pose a "danger" to persons or property as an explosion or large fire would, it was dangerous to the seeds that were placed in it because it destroyed them. And, nothing in *Salt River* limits the application of tort law to cases in which the safety of human beings or large items of property is at risk.

¶12       Next we consider the "manner in which the loss occurred." *Id*. at 377, 694 P.2d at 207. This factor "will not often be determinative," but may be relevant in particular cases. *Id.* In *Salt River*, our supreme court explained that the test set forth therein must be applied in the context of the facts of each case in order to determine whether "the facts preponderate in favor of the application of tort law or commercial law . . . or a combination of the two." *Id.* at 380, 694 P.2d at 210. Likewise, in *Flagstaff*, the court noted distinctions between the products liability and construction defect contexts. 223 Ariz. 320, ¶¶ 17, 24, 223 P.2d at 668, 669. In this case's particular commercial context, we do not find this factor particularly helpful to our analysis.

_____

[3]Whether a product is "defective and unreasonably dangerous" is a question of fact for a jury. *Times Mirror Co. v. Sisk*, 122 Ariz. 174, 178-79, 593 P.2d 924, 928-29 (App. 1978). Because we are reviewing a grant of summary judgment, and must view the facts in the light most favorable to Miidas, we presume the peat moss was defective for purposes of this decision. *See Bothell*, 192 Ariz. 313, ¶ 2, 965 P.2d at 49.

8

**¶13** We note, however, that although courts have typically focused on whether an "accident" has occurred in deciding whether a tort remedy is appropriate, our supreme court pointed out that "adherence to the safety incentive policy of strict tort liability may demand that certain losses be recoverable in tort even though only the result, and not the process, may be described as an accident or calamity." *Id.* at 377, 694 P.2d at 207. Here, as Miidas argues, the peat moss caused "widespread germination failures" and "[i]f germination occurred at all, only deformed and unproductive seedlings emerged." Berger and Global argue this suggests the peat moss simply failed to perform as expected and "there was no *sudden* calamity," but that instead Miidas's "[p]lants allegedly failed to grow or were stunted in their growth *over time*." "A product may[, however,] pose an unreasonable danger to its user, even though no sudden accident has occurred." *Id.*

**¶14** Likewise, we do not consider it dispositive that the peat moss failed to perform as expected, because when a product causes unintended damage to a plaintiff's other property, that will almost always be true. The appropriate focus instead is on the fact that the damage caused by the peat moss was calamitous to the seeds. And, as Miidas pointed out at oral argument, the peat moss here did not simply fail to meet Miidas's expectation that it would improve the seeds' germination rate. Rather, it destroyed the seeds so that they failed to germinate altogether.

**¶15** Finally, we must consider the type of damage sustained. *Id.* at 378, 694 P.2d at 208. The *Salt River* court set forth five hypothetical scenarios to illustrate situations in which the economic loss rule might apply. *Id.* The first of these scenarios involved a defect that caused the product at issue to malfunction and to destroy the

9

turbine which it controlled. *Id.* The court stated that "[b]y unanimous authority . . . the property damage . . . [was] recoverable in a strict tort liability action. The defect was unreasonably dangerous to person or property and caused accidental damage to other property." *Id.* The court then went on to discuss other situations in which a defective product had created a risk of harm but did not actually harm persons or other property, and ultimately rejected a rule that was "a blanket disallowance of tort recovery for economic losses." *Id.* at 378-79, 694 P.2d at 208-09; *see also Flagstaff*, 223 Ariz. 320, ¶ 17, 223 P.3d at 668.

¶16        Quoting from *Salt River*, Miidas argues "[w]here economic loss is accompanied by physical damage to person or other property . . . the parties' interests generally will be realized best by the imposition of strict tort liability." 143 Ariz. at 379, 694 P.2d at 209. Global, in contrast, also quoting from *Salt River*, contends that "if the only loss is non-accidental and to the product itself, or is of a consequential nature, the remedies under the [Uniform Commercial Code (UCC)] will govern and other tort theories will be unavailable." 143 Ariz. at 379-80, 694 P.2d at 209-10. And, it maintains, "[i]f the property damage alleged would already be compensated by an award of lost profits, the existence of that damage is not relevant."

¶17        We find no support in *Salt River* for the proposition that damage to other property becomes irrelevant if an award of lost profits also may be made. Indeed, *Salt River* itself involved UCC claims as well as tort claims. *Id.* at 374, 694 P.2d at 204. And, although *Salt River* does state that contract law will apply if the only loss sustained by the plaintiff is "of a consequential nature," it does not so limit a plaintiff when both

10

consequential damages and damages to other property are claimed. *Id.* at 379-80, 694 P.2d at 209-10. Indeed, "[t]he characterization of a claim as harm to other property may trigger liability not only for the harm to physical property but also for incidental economic loss." Restatement (Third) Torts (Products Liability) § 21 cmt. e (1998).

**¶18**        Our supreme court in *Salt River* did not reject the idea that tort law should apply when other property is damaged, nor did it rule that tort law should not apply when a plaintiff's primary damages were economic, as Global and Berger essentially suggest. Rather the *Salt River* court adopted a narrow version of the economic loss rule, which allows a plaintiff to proceed in tort even absent damage to persons or other property. *See Flagstaff*, 223 Ariz. 320, ¶¶ 15-16, 223 P.3d at 667-68 (explaining that *Salt River* rejected economic loss rule under which tort law would not apply absent "damage to other property or personal injury" and adopted "narrower" approach that would allow tort recovery even absent such damage where product was unreasonably dangerous and loss occurred suddenly or accidentally).

**¶19**        In sum, the peat moss at issue here damaged Miidas's seeds, which were purchased from another supplier and were property clearly separate from the allegedly defective product. *Cf. Arrow Leasing Corp. v. Cummins Ariz. Diesel, Inc.*, 136 Ariz. 444, 448-49, 666 P.2d 544, 548-49 (App. 1983) (noting tort recovery may lie when component part damages another component part if components purchased separately or from different suppliers). Thus, the third factor of the *Salt River* test, as well as the first two, supports a conclusion that the economic loss rule should not be applied in this case. The

11

trial court therefore erred in determining the rule applied and in granting summary judgment in favor of Berger and Global.

¶20 Our conclusion that the economic loss rule does not apply in this instance is supported by decisions in several other states. In *Kawamata Farms, Inc. v. United Agri Products*, 948 P.2d 1055, 1094-95 (Haw. 1997), for example, the court concluded the economic loss rule did not apply; the plaintiffs had alleged not just the loss of the defective agricultural fungicides at issue, but "their farm crops, i.e., the Plaintiffs' 'other property.'" Likewise, a Florida court determined the economic loss rule did not apply where a plaintiff's tomato crop had been damaged by defective fungicides. *E.I. DuPont de Nemours & Co. v. Finks Farms*, 656 So. 2d 171, 172 (Fla. Dist. Ct. App. 1995). And, an Iowa court reached a similar result in a case involving a plaintiff who had received the wrong drum on his planter. *Manning v. Int'l Harvester Co.*, 381 N.W.2d 376, 378-79 (Iowa Ct. App. 1985). As a result of the bad drum, the plaintiff

> was directly damaged because his crop was not as large as it should have been. Simply because the damage is measured in terms of potential sale of the crop if it had grown as it should does not automatically mean that the damage is economic. Damages for loss of cattle would also be measured in terms of the amount of money they would have brought if sold for slaughter.

*Id*. at 379. The court therefore concluded the plaintiff had sustained property damage and not purely economic losses. *Id.* Although these states do not employ the *Salt River* test adopted in Arizona, we find their reasoning and conclusions sound and helpful to our analysis here.

12

¶21　　　Miidas also contends "the economic loss doctrine does not apply where . . . the parties did not contract." And, therefore, it maintains the rule should not be applied to its claims against Berger because there was no contract between them. Miidas bases this argument on the following language in *Flagstaff*:

> The principal function of the economic loss doctrine, in our view, is to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain. These concerns are not implicated when the plaintiff lacks privity and cannot pursue contractual remedies. . . .
>
> Rather than rely on the economic loss doctrine to preclude tort claims by non-contracting parties, courts should instead focus on whether the applicable substantive law allows liability in the particular context.

223 Ariz. 320, ¶ 38, 223 P.3d at 671. Berger and Global contend, however, that this rule is limited to the construction defect context in which it arose. Because we have determined the economic loss rule does not apply in this case, regardless of whether the parties had a contract, we need not decide whether the rule applies to non-contracting parties in the products liability context.

¶22　　　Finally, the parties disagree as to whether the economic loss rule should apply to Miidas's claim for negligent misrepresentation. Relying on *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477 (9th Cir. 1995), the trial court determined the rule should apply and it precluded Miidas's claim. Our supreme court since has cited that case as one of those in which "courts have reached conflicting conclusions regarding the application of the [economic loss] doctrine under Arizona law," although it did not expressly

disapprove it. *Flagstaff*, 223 Ariz. 320, ¶ 10, 223 P.3d at 666. In any event, even if we accepted Berger's and Global's assertions that "there is no exception to the economic loss rule recognized in Arizona regarding negligent misrepresentation," or that the claim is "essentially [a] product liability claim[]" subject to *Salt River*, the claim still would not be barred by the economic loss rule for the reasons explained above. Therefore, we need not decide whether the rule applies to such a claim in the first instance.

### Disposition

¶23 The judgment of the trial court is vacated and the matter is remanded for further proceedings consistent with this decision.

/s/ *Virginia C. Kelly*
_____
VIRGINIA C. KELLY, Judge


CONCURRING:

/s/ *Garye L. Vásquez*
_____
GARYE L. VÁSQUEZ, Presiding Judge


/s/ *Peter J. Eckerstrom*
_____
PETER J. ECKERSTROM, Judge