258 P.3d 149

Jordan COOK and Tacie Cook, husband and wife, Plaintiffs/Appellants,

v.

ORKIN EXTERMINATING COMPANY, INC., a Delaware corporation; Rollins, Inc., a Delaware corporation, Defendants/Appellees.

No. 1 CA–CV 10–0313.

Court of Appeals of Arizona, Division 1, Department A.

May 19, 2011.

Beus Gilbert PLLC By Franklyn D. Jeans, Cory L. Broadbent, Scottsdale, Attorneys for Plaintiffs/Appellants.

Baird, Williams & Greer, LLP By Robert L. Greer, Craig M. LaChance, Carlos B. Gutierrez, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

WINTHROP, Judge.

¶ 1 In this opinion, we decline to extend the concept of a fiduciary relationship to include the business relationship between homeowners and a pest control company retained to treat a termite infestation. We further hold that, in the absence of personal injury, the economic loss rule, as recently addressed by our supreme court in *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 223 P.3d 664 (2010) ("*Flagstaff II*"), bars the homeowners' remaining tort claims for the company's alleged failure to eradicate the termites. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 In 1987, Jordan and Tacie Cook hired Lang Construction Company to build a home in Cave Creek. During construction, Lang used dirt that had not been treated for termites to backfill around the basement of the home. Shortly after the Cooks occupied the home, they discovered it was infested with termites.

¶ 3 When the Cooks demanded that Lang remedy the problem, Lang informed them that it would be filing for bankruptcy protection. Lang filed a claim on the Cooks' behalf with its insurer and the insurer referred the Cooks to Arizona Insurance Contractors ("AIC"). AIC contacted Orkin Exterminating Company, Inc. and Rollins, Inc. (collectively, "Orkin") and, in January 1989, executed a Subterranean Termite Agreement ("the Agreement") with Orkin for services at the Cooks' home.

¶ 4 The Cooks claim the Agreement did not represent their negotiations with Orkin. They allege that Orkin promised it would effectively treat the termites, provide lifetime termite coverage if the Cooks paid an annual fee, and repair any new termite damage to the Cooks' home and furnishings. The Cooks assert that Orkin made such promises to induce them to hire Orkin and that they relied on those promises in deciding to hire and retain Orkin. The Agreement, however, does not promise that Orkin would repair new termite damage; indeed, Orkin expressly disclaimed any obligation to repair damage to the home caused by an infestation, promising only to apply any necessary additional treatment to the Cooks' house if a termite infestation was found during the relevant time period. In addition, the Agreement did not contain Orkin's alleged promise to the Cooks that its treatment would be effective.

¶ 5 Orkin first treated the Cooks' house in 1989. In 1991, the termites returned and Orkin again treated the house. Orkin treated the house again in 1992 and 1993 when the Cooks noticed evidence of termite activity.

¶ 6 In 1994, when the Cooks again contacted Orkin, they requested that it not only treat the termites but also repair the damage caused by the termites. Orkin did not repair the home, but instead, proposed a major treatment plan. The Cooks agreed to the treatment plan, and from October 1994 through October 1995, Orkin treated the Cooks' home at least eight times by soaking the wood floors with termiticide, spraying it throughout the house, and injecting it into the walls. To allow Orkin the access necessary for this treatment, the Cooks demol-

ished portions of their home and vacated the residence for one year.

¶ 7 Shortly after they moved back in, the Cooks found evidence of active termites and Orkin returned to treat the home. Orkin treated the Cooks' home for termites twice in 1996, twice in 1997, twice in 1998, twice in 1999, once in 2000, once in 2001, once in 2002, twice in 2004, and once in 2007. The Cooks allege that each time Orkin treated the termites, it promised the treatment would be effective and asked the Cooks to be patient.

¶ 8 In 2008, the Cooks filed this action against Orkin alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, breach of fiduciary duty, negligence, negligent and intentional misrepresentation, and fraud. Orkin moved for judgment on the pleadings on the grounds that the Cooks' claims were barred by the applicable statutes of limitation and by a limitations clause in the Agreement. The court denied the motion without prejudice to Orkin to request alternate dispositive relief.

¶ 9 Thereafter, Orkin moved for summary judgment on the grounds that the Cooks' tort claims were barred by the economic loss rule ("ELR"), that Orkin owed no fiduciary duty to the Cooks, and that Orkin had not breached the Agreement. Orkin also argued that the Cooks' claims were barred by the statute of limitations and the doctrine of laches. After the motion was fully briefed, we issued our opinion in *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 221 Ariz. 433, 212 P.3d 125 (App.2009) (*"Flagstaff I"*), wherein we held that the ELR did not apply to a professional negligence claim against an architect, and the superior court granted the parties leave to file supplemental memoranda addressing that decision. Ultimately, the court ruled that the Cooks had failed to establish facts giving rise to a claim for breach of fiduciary duty and that their tort claims were barred by the ELR. It entered partial judgment for Orkin, finding no just reason for delay in entry of the judgment.[1] The Cooks timely appealed.

¶ 10 We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## ANALYSIS

¶ 11 The Cooks contend the superior court erred in granting Orkin's motion for summary judgment because there was a question of fact regarding the existence of a fiduciary duty and because the ELR does not bar their tort claims.

¶ 12 A court may grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). We view the evidence in the light most favorable to the Cooks, against whom judgment was entered, and "determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Unique Equip. Co., Inc. v. TRW Vehicle Safety Sys., Inc.*, 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App.1999). We will affirm the entry of summary judgment if it is correct for any reason. *Hawkins v. State, Dept. of Econ. Sec.*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App.1995).

### A. The Cooks Did Not State a Claim for Breach of Fiduciary Duty

¶ 13 The Cooks alleged Orkin assumed a fiduciary duty toward them by holding itself out as a "special expert" in the extermination, control, and prevention of termites and that it breached its corresponding duties of loyalty, candor, and care by failing to disclose to the Cooks that its treatment was ineffective and Orkin could not control, eliminate, or prevent termite infestations in their home. Orkin argued that it was entitled to summary judgment on this claim because, as a matter of law, it did not owe a fiduciary duty to the Cooks. The court ruled the Cooks had failed to establish facts giving rise to a fiduciary duty claim. Whether a fiduciary relationship exists is generally a question of fact unless the evidence would be insufficient to support a verdict, in which case the court may rule as a matter of law.

---

**1.** The court later entered a stay as to further proceedings pending resolution of this appeal.

*Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 24, 945 P.2d 317, 335 (App.1996).

¶ 14 "A fiduciary relationship has been described as 'something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise.' " *Taeger v. Catholic Family and Cmty. Servs.,* 196 Ariz. 285, 290, ¶ 11, 995 P.2d 721, 726 (App.1999) (quoting *In re McDonnell's Estate,* 65 Ariz. 248, 252–53, 179 P.2d 238, 241 (1947)). Further, "[m]ere trust in another's competence or integrity does not suffice" to create a fiduciary relationship. *Standard Chartered,* 190 Ariz. at 24, 945 P.2d at 335 (citation omitted). Rather, the relation of the parties must be such that "one is bound to act for the benefit of the other," *Taeger,* 196 Ariz. at 290, ¶ 11, 995 P.2d at 726 (citation omitted), and may be characterized by " 'great intimacy, disclosure of secrets, [or] intrusting of power.' " *Standard Chartered,* 190 Ariz. at 24, 945 P.2d at 335 (quoting *Rhoads v. Harvey Publ'ns, Inc.,* 145 Ariz. 142, 149, 700 P.2d 840, 847 (App.1984)). Generally, commercial transactions do not create a fiduciary relationship unless one party agrees to serve in a fiduciary capacity. *Urias v. PCS Health Sys., Inc.,* 211 Ariz. 81, 87, ¶ 32, 118 P.3d 29, 35 (App. 2005).

¶ 15 Here, Orkin agreed only to provide extermination services to the Cooks and there is no evidence that it agreed to serve as the Cooks' fiduciary or that the parties' relationship involved any of the hallmarks of a fiduciary association: intimacy, secrets, or the entrusting of power. The Cooks argue, however, that their relationship with Orkin was different than a traditional, arms-length commercial services contract because Orkin had specialized knowledge that was beyond the Cooks' fair and reasonable reach and they were unable to determine whether Orkin had correctly performed its services. We reject this argument. Although Orkin may have had more specialized knowledge about termite extermination than the Cooks, such is often the case with service providers. The law does not create a fiduciary relation in every business transaction involving one party with greater knowledge, skill, or training, but requires peculiar intimacy or an express agreement to serve as a fiduciary. *See Taeger,* 196 Ariz. at 290, ¶ 11, 995 P.2d at 726; *Standard Chartered,* 190 Ariz. at 24, 945 P.2d at 335; *Urias,* 211 Ariz. at 87, ¶ 32, 118 P.3d at 35. These elements are not met in this case. Further, although the Cooks claim they were at the mercy of the information shared by Orkin and unable to determine whether it had correctly performed its services, it is undisputed that the Cooks knew that the termites had returned in 1991, 1992, 1993, 1994, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2004 and 2007. The Cooks' trust in Orkin's expertise did not alter this armslength commercial transaction to create a fiduciary relation and oblige Orkin to act for the Cooks' benefit. *Standard Chartered,* 190 Ariz. at 24, 945 P.2d at 335.[2]

¶ 16 The superior court properly granted summary judgment for Orkin on the Cooks' breach of fiduciary duty claim.

**B. Economic Loss Rule**

¶ 17 The Cooks alleged a claim for negligence arising out of Orkin's failure to properly treat their home for termites. They also alleged Orkin was liable for misrepresentation and fraud because it misled them regarding its ability to rid their home of termites and promised that it would repair any damage to their home and furnishings resulting from new termite activity, thereby inducing them to enter the Agreement, which they otherwise would not have done. They contend the superior court erroneously applied the ELR and granted summary judgment for Orkin on these claims.

¶ 18 The Arizona Supreme Court first adopted the ELR in *Salt River Project Agric. Improvement and Power Dist. v.*

---

**2.** The Cooks cite *Seelenfreund v. Terminix of Northern Cal., Inc.,* 84 Cal.App.3d 133, 148 Cal. Rptr. 307 (1978), in support of their argument that Orkin's knowledge and skills were such that it should be treated as a fiduciary. We find that case, in which the California Court of Appeals held that the discovery rule applied to the plaintiff's action against a pest control company, unpersuasive on the issue of whether the Cooks stated a valid claim for breach of fiduciary duty.

*Westinghouse Elec. Corp.*, 143 Ariz. 368, 694 P.2d 198 (1984), a case involving a claim for strict product liability. It directed that in order to determine whether a particular cause of action sounds in tort or contract, a court must consider the facts of the case while bearing in mind that tort law is designed to promote the safety of persons and property whereas contract law is designed to protect the parties' expectations. *Id.* at 375–77, 694 P.2d at 205–07.[3]

¶ 19 The Arizona Supreme Court next addressed the ELR in 2010 when it reversed our opinion in *Flagstaff I*, and held that "a plaintiff who contracts for construction cannot recover in tort for purely economic loss, unless the contract otherwise provides." *Flagstaff II*, 223 Ariz. at 326–27, ¶ 33, 223 P.3d at 670–71.[4] Relying on *Salt River Project*, the court wrote that whether the ELR will apply may vary depending upon "context-specific policy considerations" and "the underlying policies of tort and contract law." *Flagstaff II*, 223 Ariz. at 325, ¶ 24, 223 P.3d at 669. It then analyzed the contract law policy of upholding the parties' expectations and found it particularly applicable in construction defect cases, where the relevant contracts are often specifically negotiated for each project and have detailed provisions allocating losses and remedies. *Id.* at 325, ¶ 25, 223 P.3d at 669. In contrast, the policies of accident deterrence and loss-spreading did not require allowing tort recovery in addition to contract remedies, because the parties had already made these contractual allocations. *Id.* at 325–26, ¶ 27, 223 P.3d at 669–70. In addition, it determined that in construction defect cases involving only pecuniary losses related to the building that was

the subject of the construction contract there were "no strong policy reasons to impose common law tort liability in addition to contractual remedies." *Id.* at 325, ¶ 26, 223 P.3d at 669. The court held that, given these considerations, "in construction defect cases, 'the policies of the law generally will be best served by leaving the parties to their commercial remedies' when a contracting party has incurred only 'economic loss, in the form of repair costs, diminished value, or lost profits.'" *Id.* at 326, ¶ 28, 223 P.3d at 670 (quoting *Salt River Project*, 143 Ariz. at 379, 694 P.2d at 209). The court ruled that the ELR would not prohibit tort recovery "when economic loss is accompanied by physical injury to persons or other property." *Id.* at 326–27, ¶ 33, 223 P.3d at 670–71.

¶ 20 We consider the relevant contract and tort law policies and determine the ELR applies in this case and limits the Cooks' claims to those in contract. As in *Flagstaff II*, the contract law policy of upholding the parties' expectations favor limiting the Cooks' claims to those in contract and, where there has been no injury besides that to the subject property, there is no strong policy reason to impose tort liability. *Id.* at 325–26, ¶¶ 26–27, 223 P.3d at 669–70.[5] Accordingly, we apply the ELR and hold that the Cooks are limited to their contractual remedies for purely economic loss from Orkin's alleged failure to adequately perform its promises under the Agreement. Because the Cooks are seeking remedies for purely economic loss from Orkin's alleged failure to adequately perform its promises under the Agreement, the ELR bars their tort claims.[6]

¶ 21 The Cooks contend the superior court erred in dismissing their consumer

---

3. The court also discussed the nature of the product defect, and the manner in which the loss occurred, factors relevant only in strict product liability cases. *Id.* at 379–80, 694 P.2d at 209–10.

4. The ELR addresses "[e]conomic loss" in the form of "pecuniary or commercial damage, including any decreased value or repair costs for a product or property that is itself the subject of a contract between the plaintiff and defendant, and consequential damages such as lost profits." *Id.* at 323, ¶ 11, 223 P.3d at 667.

5. The Cooks did not offer any evidence to support their claim that they suffered personal injuries. Rather, Mr. Cook testified in his deposition

that he did not know if he or members of his family had suffered medical problems as a consequence of the termiticide in the Cooks' home and only speculated that medical care obtained by the family may have been related to the termiticide. Thus, no genuine issue of material fact exists on this issue.

6. We reject the Cooks' argument that the ELR does not apply to their fraud and misrepresentation claims. The Arizona Supreme Court held in *Flagstaff II* that a contracting party is *limited wholly* to its contractual remedies for purely economic loss related to the subject of the parties' contract. *Id.* at 326, ¶ 28, 223 P.3d at 670. (Emphasis added).

fraud claims under A.R.S. § 44–1522 (Supp. 2010) because the ELR does not apply to that statutory action. Because they did not plead a claim for consumer fraud in the superior court and never argued that they had stated such a claim, we do not consider this argument. *Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116, ¶ 16, 41 P.3d 651, 654 (App.2002) (stating that the failure to raise an issue in trial court waives the argument on appeal); *Rhoads v. Harvey Publ'ns, Inc.*, 131 Ariz. 267, 269, 640 P.2d 198, 200 (App.1981) (reiterating the rule that an appellate court will not reverse summary judgment on grounds first advanced on appeal). The Cooks primarily rely on two cases to support their proposition that they properly made a claim for consumer fraud. In *Parks v. Macro–Dynamics, Inc.*, 121 Ariz. 517, 591 P.2d 1005 (App.1979), the court held, in evaluating a motion to dismiss, that the plaintiff's complaint had alleged the elements of a private action for consumer fraud and was therefore legally sufficient. *Id.* at 520–21, 591 P.2d at 1008–09. In *Flory v. Silvercrest Indus.*, 130 Ariz. 15, 633 P.2d 424 (App. 1980), the court held that the trial court had not erred by instructing the jury regarding a non-pled consumer fraud claim because the defendant's claimed surprise was precluded given the similarity of the claim to that for common law fraud, which the parties tried to the jury. We are not persuaded by the cases the Cooks cite in their reply brief, as they concern different procedural circumstances and standards of review than the instant case.

¶ 22 Because of our resolution of the breach of fiduciary duty and other tort claims issues, we need not address Orkin's alternative argument concerning the statute of limitations.

### CONCLUSION

¶ 23 For the foregoing reasons, we affirm.

CONCURRING: PHILIP HALL, Presiding Judge and JON W. THOMPSON, Judge.