NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BEST WESTERN INTERNATIONAL INC,
*Plaintiff/Appellee*,

*v.*

OAKLAND PARK INN INC, et al.,
*Defendants/Appellants.*

No. 1 CA-CV 17-0775
FILED 12-6-2018

---

Appeal from the Superior Court in Maricopa County
No. CV2015-000279
The Honorable Randall H. Warner, Judge

**JUDGMENT VACATED IN PART, AFFIRMED IN PART,
REMANDED**

---

COUNSEL

Radix Law, PLC, Scottsdale
By Michelle Swann, Jonathan B. Frutkin
*Counsel for Plaintiff/Appellee*

The Anderson Law Firm, PLC, Phoenix
By Carl R. Anderson
*Counsel for Defendants/Appellants*

_____

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

_____

**J O H N S E N**, Judge:

¶1          Alice Marquez and Oakland Park Inn, Inc. (collectively, "Defendants") appeal the superior court's orders (1) striking their answer and counterclaims and allowing Best Western International, Inc. to proceed by default; (2) granting summary judgment for Best Western on its claim for breach of contract and (3) ruling on summary judgment that Best Western did not owe Defendants a fiduciary duty.  We vacate the judgment in part, affirm in part and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          In 2002, Marquez signed an agreement ("Membership Agreement") with Best Western to become a Best Western member.  Marquez's membership entitled her hotel, the Oakland Park Inn, to use Best Western's trademarks and other services.  In 2014, Best Western notified Defendants they were late in paying dues and fees owed under the Membership Agreement and that, as a result, the membership might be terminated.  Ultimately, Best Western terminated the membership in September 2014 and demanded that Defendants stop using Best Western's trademarks.

¶3          In January 2015, Best Western filed a complaint alleging breach of contract, open and stated account, unfair competition, trademark dilution, trademark infringement and unjust enrichment.  Defendants answered and asserted several counterclaims.  Extensive motion practice followed, including three motions for summary judgment.

¶4          In January 2017, however, Defendants' former counsel withdrew from the case.  Defendants then retained another lawyer who agreed to represent them only in specified pretrial proceedings.  In April 2017, the court set a five-day jury trial to begin on November 6, 2017.

¶5          In July 2017, Best Western asked the superior court to set a status conference because Defendants' counsel had told Best Western that his representation of Defendants was complete, except for settlement

negotiations. In response to Best Western's request, the court set a status conference for August 10, directing that "[c]ounsel and any unrepresented parties shall **appear in person**." Defendants' counsel, however, filed a "Notice of Unavailability," saying he was going to be away until August 15 and would be unable to participate in "hearings or conferences" before then. Accordingly, the court issued an order resetting the August 10 status conference to August 16. As before, the court ordered that "[c]ounsel and any unrepresented parties shall **appear in person**." The court also ordered Defendants and their counsel to state whether counsel would represent Defendants at trial and warned Defendants that the court would not continue the November 6 trial date.

¶6            Neither Defendants nor their counsel appeared for the status conference on August 16. In their absence, the court affirmed the November 6 trial date and reset the status conference for August 28, ordering that Defendants' counsel then "appear in person and show good cause for his nonappearance" at the August 16 proceeding. The court also ordered "any unrepresented parties" to appear in person at the August 28 conference.

¶7            Neither Defendants nor their counsel appeared for the status conference on August 28. In the ensuing minute entry, the court stated that notices of the August 16 and 28 conferences had been mailed to Defendants' counsel at his business address, such that Defendants had notice of both proceedings. The court then stated:

> No one has appeared for Defendants at either hearing. The court therefore finds that Defendants have abandoned their defense of this case and their prosecution of counterclaims, and it strikes Defendants' answer and directs [Best Western] to proceed by default.

¶8            On September 6, Defendants' counsel filed a notice of withdrawal, representing that his work on the case was complete, along with an "Emergency Motion for Continuance" seeking time for Defendants to retain new counsel. On September 10, through counsel, notwithstanding his notice of withdrawal, Defendants filed an "Emergency Motion to Reconsider and Reinstate Defendants' Answer and Counterclaims." The motion asserted that Defendants' counsel had not received the minute entries setting the two August status conferences. In an attached affidavit, Defendants' counsel stated he had not received any "law firm mail pertaining to this case" when he checked his mail in August.

¶9 The court denied Defendants' motion for a continuance, ruling that, given its prior ruling vacating the trial and ordering Best Western to proceed by default, nothing remained to be continued. After receiving Best Western's response to the Motion to Reconsider and Reinstate and Defendants' reply, the court set oral argument for October 27, 2017. In the meantime, as the court had directed, Best Western filed a motion for entry of default judgment and an application for attorney's fees and costs.

¶10 At the oral argument on Defendants' motion, their counsel appeared in person and Walter Johnson, Oakland Park Inn's CEO and general manager, was present by phone. In response to a question from the court, Johnson stated that Defendants did not have another lawyer "in place" for trial. The court then asked about counsel's failure to appear at the two August conferences, and counsel responded he had received no notice of those proceedings by mail. At that point, the court clerk stated that minute entries were sent to counsel by email, not by mail. Counsel then confirmed that the court had his correct email address but offered as "speculation" that he did not receive the emails because he had been experiencing a series of computer problems.

¶11 The court then ruled as follows:

> This Court relies on lawyers to get the minute entries, and every once in a while something happens with one, but to not get three minute entries, I don't find any grounds for excusable neglect.

> We set hearings. I relied on those hearings. Plaintiffs and plaintiffs' counsel relied on those hearings. And so for that reason, I'm not going to reconsider my order, and I'm not going to vacate the default.

> In addition – well, this is not a legal ground for my ruling. I'm simply denying the Motion for Reconsideration. But I'm going to add, if I granted the motion, I honestly don't know what happens next because there's nobody to represent [Defendants]. And I've given them many, many months to get a lawyer in place that could try this case.

¶12 The court denied Defendants' Motion to Reconsider and Reinstate and entered judgment for Best Western and awarded damages, attorney's fees and costs in the amount of $429,452.41. Defendants filed a timely notice of appeal from the court's judgment and order denying their

Motion to Reconsider and Reinstate. The notice of appeal also identified the court's interim summary judgment rulings.[1]

## JURISDICTION

**¶13**       Best Western argues this court lacks jurisdiction over Defendants' appeal. As Best Western argues, "[t]he general rule is that there is no appeal from a default judgment . . . ." *Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 311 (1983). A defaulting party's "primary remedy" is a motion for relief from the default judgment under Arizona Rule of Civil Procedure 60. *Hirsch*, 136 Ariz. at 311. And in the usual case, "[t]he scope of an appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to set aside and does not extend to a review of whether the trial court was substantively correct in entering the judgment from which relief was sought." *Id.*

**¶14**       That rule does not apply, however, when, as here, the default judgment is the result of an order striking a party's answer as a sanction. *See Sears Roebuck & Co. v. Walker*, 127 Ariz. 432, 435-36 (App. 1980). In such a case, the party need not move for post-judgment relief before appealing. *See id.* Accordingly, we have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes sections 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).[2]

## DISCUSSION

**A.       The Superior Court Abused Its Discretion by Striking the Defendants' Answer and Counterclaim.**

**¶15**       Rule 16(h)(1)(A) authorizes the superior court to impose a sanction when a party or its attorney fails to obey a pretrial order. We review such a sanction for abuse of discretion. *See Estate of Lewis v. Lewis*,

---

[1]       On motion by Best Western, this court set oral argument and emailed notice to all counsel of the date and time of argument. Defendants' counsel did not appear for the oral argument. In response to a subsequent order to show cause, counsel averred that he had notified the court and opposing counsel of a change in his email address, but the court has no record of receiving counsel's notice, and Best Western's counsel reported she did not receive it, either. The court has issued an order reprimanding Defendants' counsel and notified the State Bar of Arizona of the reprimand.

[2]       Absent material revision after the relevant date, we cite the current version of a statute or rule.

229 Ariz. 316, 324, ¶ 20 (App. 2012) (default entered for party's failure to appear in person at pretrial conference); *Seidman v. Seidman*, 222 Ariz. 408, 411, ¶ 18 (App. 2009) (default entered for party's failure to attend her deposition). But "when a court imposes severe sanctions such as dismissal, striking a pleading, or entering a default judgment, 'its discretion is more limited than when it employs lesser sanctions.'" *Lewis*, 222 Ariz. at 323, ¶ 18 (quoting *Rivers v. Solley*, 217 Ariz. 528, 530, ¶ 11 (App. 2008)). In that event, due process circumscribes the court's power to impose severe sanctions. *Seidman*, 222 Ariz. at 411, ¶ 18. In particular, before a court can enter a default as a sanction, it must hold an evidentiary hearing and find that (1) the client – not its counsel – was at fault for the violation; (2) the client committed the violation willfully or in bad faith; and (3) the court considered lesser sanctions but the egregiousness of the violation warrants the more severe sanction. *See id.* at 411, ¶¶ 19-20.

**¶16** Defendants argue the superior court abused its discretion under *Seidman* by striking their answer and counterclaim as a sanction.[3] We agree the record does not support the court's decision to enter a default judgment as a sanction.

**¶17** First, the only evidence relating to the Defendants' and their counsel's failure to appear at the status conferences was the lawyer's statements that he did not receive the minute entries setting the status conferences either by mail or by email. Although the superior court concluded counsel had not demonstrated excusable neglect for failing to appear at the conferences, there is no evidence in the record that Defendants themselves were at fault for their nonappearance or for their counsel's nonappearance, or that they failed to appear willfully or in bad faith. Moreover, nothing in the record shows that the court considered imposing a lesser sanction for their failure to appear. *See* Ariz. R. Civ. P. 16(h)(1); *Lewis*, 229 Ariz. at 326, ¶ 26 (court abused its discretion by failing to consider lesser sanction for party's failure to appear).

**¶18** Best Western argues the superior court's finding of "excusable neglect" by counsel and the court's subsequent use of the default procedures under Rule 55 satisfied due-process requirements. As stated

---

[3] Defendants also argue the court failed to make findings as *Seidman* requires. In response, Best Western's answering brief does not address *Seidman* but argues, *inter alia*, that Defendants waived that argument by failing to ask the court for findings. Our decision is based on the absence of evidence under *Seidman* to support the sanction order, not the absence of requisite findings.

above, however, a lawyer's excusable neglect, by itself, does not support imposition of a default sanction against the lawyer's client. *Compare* Rule 60(c)(1) *and Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 108-09, ¶ 37 (App. 2017) ("Neglect is excusable when it is such as might be the act of a reasonably prudent person in the same circumstances.") (quotation omitted) *with Seidman*, 222 Ariz. at 411-12, ¶ 20 (barring default sanction unless client was at fault, acted willfully or in bad faith and lesser sanctions are unavailing).

**¶19**　　　　For these reasons, the court abused its discretion in striking Defendants' pleadings and ordering Best Western to proceed by default. Accordingly, we reverse and remand the court's resulting order entering judgment on the claims and counterclaims that were unresolved as of August 2017.[4]

**B.　　Best Western's Summary Judgments.**

**¶20**　　　　Before the sanction proceedings, the superior court had granted summary judgment to Best Western on its pre-termination breach-of-contract claim and on Defendants' contention that Best Western owed them a fiduciary duty. We review those rulings *de novo*. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *Orme School v. Reeves*, 166 Ariz. 301, 305-10 (1990). There is no genuine dispute as to any material fact when a nonmoving party produces facts that "have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced." *Orme School*, 166 Ariz. at 309.

> **1.　　Summary judgment on Best Western's claim for pre-termination breach of contract.**

**¶21**　　　　Best Western moved for summary judgment on its breach-of-contract claim based on Defendants' alleged failure to pay fees and dues owed under the Membership Agreement. In response, Defendants argued,

---

[4]　　　Best Western argues Defendants waived any dispute as to the default judgment the court finally entered by failing to object to any of Best Western's Rule 55 filings. But after the court struck Defendants' pleadings on August 28, Defendants had no basis on which to object.

*inter alia*, there was no breach because Best Western had agreed to modify the Membership Agreement to allow Defendants to make the delinquent payments on a revised payment schedule.[5]  Best Western argued that no enforceable modification had occurred because only Marquez could agree to modify the Membership Agreement, and she had not signed the modification.  The superior court rejected Defendants' argument and granted summary judgment for Best Western.

¶22        Parties to a contract may agree to modify their contract.  *See Ancell v. Union Station Assocs., Inc.*, 166 Ariz. 457, 460 (App. 1990).  Modification requires "(1) an offer to modify the contract, (2) assent to or acceptance of that offer, and (3) consideration."  *Demasse v. ITT Corp.*, 194 Ariz. 500, 506, ¶ 18 (1999).   In response to Best Western's motion, Defendants offered evidence that Best Western offered a payment plan and that they accepted and complied with the offer's terms.

¶23        The superior court did not err in granting Best Western's motion, however, because Defendants did not show that Marquez signed the payment plan.  *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14 (App. 2001) (appellate court may affirm summary judgment ruling if it is correct for any reason).  Defendants offered evidence that Marquez authorized Walter Johnson, Oakland Park's CEO and general manager, to accept Best Western's revised plan on behalf of Oakland Park.  But only Marquez could accept Best Western's offer to modify the Membership Agreement because she, not the Oakland Park Inn, was party to the Membership Agreement.  The Membership Agreement states:

> 3. This Membership Application and Agreement is made jointly by the owner or lessee of the [Oakland Park Inn] and a natural person known as the voting member.  The owner or lessee of the [Oakland Park Inn] is Alice Marquez.  The voting member is Alice Marquez.  THE OWNER OR LESSEE AND THE VOTING MEMBER ARE EACH PERSONALLY RESPONSIBLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS TO BEST WESTERN ARISING UNDER THIS

---

[5]        Based on a prior ruling by the superior court that a question of fact existed as to modification, Defendants argue the law-of-the-case doctrine barred the court from reconsidering the issue in a subsequent summary judgment motion.  The law-of-the-case doctrine, however, is "one of procedure, not of substance.  A court does not lack the power to change a ruling simply because it ruled on the question at an earlier stage."  *Love v. Farmers Ins. Grp.*, 121 Ariz. 71, 73 (App. 1978).

MEMBERSHIP APPLICATION AND AGREEMENT OR RELATING TO THE AFFILIATION OF [Oakland Park Inn] WITH BEST WESTERN.

\* \* \*

12. Applicant agrees to timely pay all fees, dues, charges and assessments imposed generally on the membership by [Best Western's board of directors], and the cost of all goods or services provided by or ordered through Best Western.

*See* Restatement (Second) of Contracts § 52 & cmt. a, illus. 1 (offer may be accepted only by person who is to be bound).

**¶24** Marquez and Johnson knew that Marquez would need to personally sign to accept a revised payment plan; she had signed five prior modifications to the Membership Agreement, the last of which expired just a few months before the delinquencies that culminated in this litigation. Although Best Western informed Defendants that the modified payment plan could not be complete until Marquez signed it, she did not do so. Defendants argued that Marquez was away in New York attending to her husband, who was ill, but they offered no evidence that Marquez took any steps to timely communicate her assent to the payment plan. Further, they offered no evidence that Marquez granted Johnson authority to act for her personally – only that he could act for Oakland Park Inn.

**2. Summary judgment on Defendants' affirmative defense asserting breach of fiduciary duty.**

**¶25** In August 2016, Best Western moved for summary judgment on Defendants' affirmative defense that Best Western breached a fiduciary duty owed to Defendants. The court granted the motion, ruling that Best Western owed Defendants no fiduciary duty.[6]

**¶26** On appeal, Defendants argue the court erred because a fiduciary relationship arose out of language in the Best Western

---

[6] While Best Western's summary judgment motion was pending, Defendants filed an amended answer and counterclaim alleging breach of fiduciary duty. After the superior court granted Best Western's motion and upon another motion by Best Western, the court dismissed the fiduciary-breach counterclaim. Defendants do not appeal that dismissal.

International Bylaws and Articles ("Bylaws"), a letter Best Western sent to its members, and "the [p]arties' relationship of confidence and trust."

¶27 A fiduciary relationship is formed when "something approximating business agency, professional relationship, or family tie impel[s] or induc[es] the trusting party to relax the care and vigilance [it] would ordinarily exercise." *Cook v. Orkin Exterminating Co., Inc.*, 227 Ariz. 331, 334, ¶ 14 (App. 2011). Typically, for a fiduciary relationship to exist, one party must be "bound to act for the benefit of the other" and the relationship must involve "great intimacy, disclosure of secret, or [e]ntrusting of power." *Id.* "[M]ere trust in another's competence or integrity" will not create a fiduciary relationship; similarly, "commercial transactions do not create a fiduciary relationship unless one party agrees to serve in a fiduciary capacity." *See id.* "Although the existence of a fiduciary duty is generally a question of fact, 'when the evidence is insufficient to support a verdict, the [superior] court has a duty to decide the issue.'" *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 24 (App. 1996) (quoting *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 504-05 (1996)).

¶28 Defendants' contention is belied by the Membership Agreement, which states:

> The relationship of Best Western to its members is one of an independent contractor. Neither party has the power to obligate or bind the other in any way. No relationship of partners, joint venturers or agents is created. Best Western only provides services as directed by the membership. Best Western has no responsibility for the . . . operation of [the Oakland Park Inn] . . . . Best Western has no control over or responsibility for any decision affecting the employment or supervision of any person employed in connection with [the Oakland Park Inn].

(Emphasis omitted). This language does not show that Best Western is "bound to act for the benefit of" Defendants; it instead shows the parties merely agreed to form a commercial relationship. *See Cook*, 227 Ariz. at 334, ¶ 14; *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 86-88, ¶¶ 29-35 (App. 2005).

¶29 Defendants cite no persuasive evidence to support their contention that, notwithstanding the above language from the Membership Agreement, Best Western owed them a fiduciary duty. Defendants cite a provision from the Bylaws stating that a "[d]irector [*i.e.* a member of Best Western's board of directors,] is accountable to [Best Western] and all

Members for . . . breach of fiduciary duty." But that section also specifies a director's "fiduciary duty" only encompasses a duty to act "in the best interest of [Best Western]." It imposes no duty on a director to act in the best interest of an individual member, only that a director is "accountable to . . . all members." Defendants also rely on a single letter from Best Western's directors stating they believed they had a "fiduciary responsibility" to inform members of another director's violation. A single use of the term "fiduciary" in one letter is insufficient to create a genuine question of material fact in this case. *See Orme School*, 166 Ariz. at 310.

¶30 Lastly, Defendants argue a fiduciary relationship was created through their reliance on Best Western's "knowledge and skills" in managing a hotel when they decided to invest in a hotel franchise and Defendants' compliance with Best Western's requirements that the Oakland Park Inn take certain actions. "[M]ere trust in [Best Western's] competence," however, is insufficient to create a fiduciary relationship, particularly when the parties have entered a commercial transaction – a franchise agreement – without agreeing to form such a relationship. *See Cook*, 227 Ariz. at 334, ¶ 14.

## CONCLUSION

¶31 For the reasons stated above, we (1) vacate the October 27, 2017 default judgment in favor of Best Western, (2) reverse the August 30, 2017 order imposing a default sanction and the October 27, 2017 order and judgment denying Defendants' Motion to Reinstate, (3) order the superior court to reinstate Defendants' answer and counterclaim, (4) affirm the April 10, 2017 grant of summary judgment in favor of Best Western on its claim

for breach of contract, (5) affirm the December 21, 2016 entry of summary judgment on Defendants' affirmative defense concerning breach of fiduciary duty, and remand for further proceedings consistent with this decision.

¶32　　　　Defendants and Best Western each ask for their attorney's fees on appeal; we deny both requests without prejudice to the parties' right to seek a determination of the issue by the superior court on remand.　We grant Defendants their costs of appeal, contingent on their compliance with Arizona Rule of Civil Appellate Procedure 21.

