NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AJMAN STUD, a business entity organized and existing under the laws of the United Arab Emirates, Ajman Emirate; SHEIKH AMMAR BIN HUMAID AL NUAIMI, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> DAVID CAINS; et al., <br><br> Defendants-Appellants, <br><br> and <br><br> UNKNOWN PARTIES, 1 through 30, inclusive, <br><br> Defendant. | Nos. 19-16779 <br>         20-16648 <br><br> D.C. No. 2:15-cv-01045-DJH <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted July 8, 2021
Portland, Oregon

Before:  M. MURPHY,[**] PAEZ, and BENNETT, Circuit Judges.

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Michael R. Murphy, United States Circuit Judge for

In 2012, Plaintiff-Appellee, Ajman Stud, purchased a mare named La Bella Versace (the "Mare") from Defendant, Stonewall Farms Arabians, LLC ("Stonewall"). Defendant-Appellant, David Cains, negotiated the sale on behalf of Stonewall. According to Ajman Stud's agent, Elisa Grassi, Cains told her the Mare had not been bred and he failed to disclose the Mare was subject to reserved embryo rights. Stonewall received payment for the Mare on February 28, 2012, but did not deliver her to Appellees until May 2012. While the Mare was in Stonewall's care, she was artificially inseminated and two embryos were extracted. Appellees did not learn the Mare was bred while at Stonewall Farms until June 2013.

In 2015, Appellees brought an action in Arizona state court raising the following claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) fraud, (4) conversion of property rights, (5) breach of fiduciary duty, and (6) breach of bailment duties. Appellees also sought declaratory relief. Appellants removed the case to federal district court. After a six-day bench trial, judgment was entered in favor of Appellees on all claims except the breach of contract claim. Appellees were awarded $975,000 in compensatory damages and $100,000 in punitive damages.

---

the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

Thereafter, the district court awarded Appellees their attorneys' fees, expert witness fees, and non-taxable costs in the amount of $743,356.93.

Our jurisdiction over these consolidated appeals arises under 28 U.S.C. § 1291. We **affirm** in part, **reverse** in part, and **remand** for further proceedings.

### Appeal No. 19-16779

1. Appellants seek a new trial, arguing the district court's written Order contains numerous clearly erroneous findings of fact and miscitations to the record, thereby undermining confidence in the court's judgment.[1] Conspicuously missing from Appellants' briefs, however, are examples illustrating how the district court's alleged errors and miscitations actually affected any aspect of the court's judgment. All of Appellants' arguments are based on mere speculation. Further, Appellants have failed to identify any precedent in this court, or any other, supporting the proposition that a party is entitled to a new trial when a district court makes erroneous nonmaterial findings. Accordingly, the request for a new trial is denied.

---

[1] Related to this claim, Appellants have moved this court to take judicial notice of a four-page, single-spaced Exhibit appended to their opening appellate brief. Because the Exhibit contains argument, not materials amenable to judicial notice pursuant to Fed. R. Evid. 201(b), the motion is **denied**.

3

2. Before trial, Appellants moved to dismiss Appellees' claims as a sanction for alleged improprieties that occurred during the deposition of Plaintiff, Sheikh Ammar bin Humaid al Nuaimi, the Crown Prince of the Emirate of Ajman ("Sh. Ammar"). Appellants' belief that Grassi coached Sh. Ammar during his deposition by sending text messages to his phone is not supported by any evidence. To the contrary, Grassi testified she did not text Sh. Ammar[2] and the district court found her credible on this point. Further, Appellants have not shown Appellees were responsible for any malfunction of the video-conference equipment or loss of the data connection during Sh. Ammar's deposition. Because Appellants cannot show Appellees engaged in the conduct of which they are accused, the district court did not abuse its discretion in refusing to dismiss Appellees' claims as a sanction.

3. Prior to trial, Appellants sought to exclude evidence of three separate instances in which Cains was accused of business improprieties,

---

[2] Appellants' Motion to Transmit to the Court a Flashdrive of Sh. Ammar's Deposition is **denied**. According to Appellants, the video recording shows Sh. Ammar repeatedly monitoring his cell phone during the deposition. Even if true, the video would not provide the necessary evidence to support Appellants' assertion that Sh. Ammar was receiving text messages from Grassi.

including failing to disclose reserved breeding rights and fabricating a contract to conceal the nondisclosure; selling a horse he did not own at the time of the sale; and filing paperwork with the American Horse Association falsely representing Stonewall was the owner of a horse at the time embryos were extracted. The district court denied Appellants' pre-trial motion, concluding the evidence of prior bad acts was probative of lack of mistake and the probative value was outweighed by any prejudice. *See* Fed. R. Evid. 404(b)(2). Appellants' opening brief attacks this ruling generally, but contains only one citation to the record[3] and no citations to caselaw, making it impossible for this court to conduct any meaningful review of the alleged errors in the district court's analysis. Further, Appellants have wholly failed to show they were "substantially prejudiced" by the introduction of the evidence, a necessary component of their appellate challenge to the district court's evidentiary ruling. *Harper v. City of L.A.,* 533 F.3d 1010, 1030 (9th Cir. 2008). Accordingly, we affirm the district court's ruling on the introduction of Cains's prior bad acts.

4. The district court granted Appellees' pretrial motion to exclude evidence underlying a civil lawsuit Cains, Bailey, and Stonewall filed

---

[3] Appellants' argument does not even contain a record citation to the district court's ruling on their motion.

5

against Grassi and Frank Spönle in Arizona state court (the "Cains/Grassi suit"). The court ruled, *inter alia*, that permitting the introduction of the proposed evidence would confuse the trier of fact because the evidence touched on unresolved issues in a completely separate transaction. The district court's ruling comports with Fed. R. Evid. 403 which provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative." Appellants have not shown the district court clearly erred in finding that confusion would result from the introduction of disputed evidence[4] involving an unrelated transaction that occurred two years after the Mare was purchased by Ajman Stud. Thus, the district court did not abuse its discretion in excluding the evidence.

5. We next conclude the district court did not err in ruling that Bailey was liable for any judgment in favor of Appellees under an alter ego theory. Under Arizona law, the proponent of the alter ego theory of liability must show (1) unity of interest and (2) that observance of the corporate form would sanction a fraud or promote injustice. *Dietel v. Day*, 492 P.2d 455,

---

[4]     Judgment was entered in favor of the defendants in the Cains/Grassi suit, but no findings of fact were made.

457 (Ariz. Ct. App. 1972). The district court concluded Cains and Bailey "had a unity of interests in Stonewall Farms making them indistinguishable from the corporation." In support of this conclusion, the district court referenced ample evidence showing Stonewall's assets were intermingled with Cain's and Bailey's personal assets.

According to Appellants, however, there is no evidence showing Stonewall was formed to perpetrate a fraud or was used for fraudulent purposes. Arizona law does not require such evidence to support alter ego liability. The law requires that observance of the corporate form would *either* "sanction a fraud" *or* "promote injustice." *Id*. at 457-58. Here, the same evidence that shows unity of interest also supports the conclusion that observance of the corporate form would promote injustice. In addition to evidence showing Appellants' assets were intermingled, there was evidence that Stonewall paid approximately $200,000 to repair and maintain real property owned by Bailey.[5] Because this evidence shows Stonewall's assets were used to enrich Bailey—leaving fewer assets in Stonewall's coffers to satisfy the judgment in favor of Appellees—it would promote injustice to observe corporate formalities.

---

[5] Bailey testified he could not recall what, if anything, he did to reimburse Stonewall for these payments.

7

6. Appellants challenge the judgments entered against them on four of Appellees' claims: (1) fraud, (2) breach of the covenant of good faith and fair dealing, (3) breach of bailment agreement, and (4) breach of a fiduciary duty. We conclude Appellants are only entitled to relief from the judgment in favor of Appellees on the breach of fiduciary duty claim.

There was no clear error in the district court's finding that Appellants engaged in fraud. The supporting evidence is fully set out in the court's Order and includes testimony showing that material misrepresentations were made by Appellants in their efforts to sell the Mare. Appellants point to controverting evidence, but conflicting evidence is common in civil trials and its existence does not show the district court's judgment is unsupported by clear and convincing evidence. *See Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1083 (9th Cir. 2020).

There was, likewise, no error in the district court's finding that Appellants breached the implied covenant of good faith and fair dealing. Appellants allege, generally, there was no evidence supporting the court's finding on this claim. The district court's Order, however, cites ample evidence, none of which Appellants even reference in their opening brief.

As to Appellees' bailment claim, Appellants argue there was no bailment because Ajman Stud never delivered the Mare to Stonewall.

8

Instead, they assert, Stonewall had possession of the Mare at the time of the sale and she simply remained on Stonewall's property until she was delivered to Gallun Farms. We reject this argument because Appellants have cited no Arizona precedent for the proposition that a bailment cannot exist unless the bailor takes physical possession of an item after purchasing it from the bailee. Here, the district court found Appellants agreed to board and transport the Mare after ownership transferred to Ajman Stud. This evidence is sufficient to support the court's conclusion that a bailment existed.

In contrast to the other issues raised by Appellants, their challenge to the district court's judgment in favor of Appellees on the breach of fiduciary duty claim is well-taken. The district court's finding that a fiduciary relationship existed between the parties is not supported by the record. Under Arizona law, whether a fiduciary relationship exists as a matter of fact is governed by an analysis of multiple factors, including health, age, relative sophistication of the parties, the length and nature of the relationship between the parties, and the degree of influence by one party over the other. *See*, *e.g.*, *Eagerton v. Fleming*, 700 P.2d 1389, 1392 (Ariz. Ct. App. 1985). The evidence on which the district court relied showed only that Appellants and Appellees had a long-standing relationship that

was a mix of personal and professional. There was no evidence one party had any degree of influence over the other; or evidence that Appellants were more sophisticated than Appellees; or evidence showing "any of the hallmarks of a fiduciary association: intimacy, secrets, or the entrusting of power." *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011). Accordingly, we reverse the judgment against Appellants on the breach of fiduciary duty claim.[6]

7. The district court awarded Appellees $975,000 in compensatory damages and $100,000 in punitive damages. A significant portion of the compensatory damages award was based on the district court's finding that Appellants' wrongful conduct deprived Appellees of the opportunity to breed the Mare in April and May 2012. Appellants argue that damages are generally not recoverable for the value of unborn livestock because such damages are speculative. They further argue the district court's finding that four viable embryos could have been flushed from the Mare in April and May is not supported by the evidence. The record, however, shows the

---

[6] Reversal of this portion of the district court's judgment has no effect on the award of compensatory or punitive damages in favor of Appellees.

compensatory damages are not speculative and supports the amount of the award.[7]

Grassi testified that Ajman Stud purchased the Mare for a specific purpose—to breed her to a stallion it owned named Vervaldee. Grassi further testified she told Cains that Ajman Stud wanted the Mare transported to Gallun Farms as soon as Stonewall received payment. According to Grassi, "[t]here was never a moment where [Appellees] said we are not in a hurry in bringing [the Mare]" to Gallun Farms. This testimony supports the proposition that Appellees had a concrete, specific intention to breed the Mare to Vervaldee at Gallun Farms as soon as possible. Their intention was not uncertain or equivocal.

Appellees' expert, Nancy Gallun, testified that if the Mare had been bred with Vervaldee in April and May of 2012, four embryos could have been extracted. Appellants challenge this testimony, contending that Vervaldee had "impotent semen" and any attempt at breeding him with the Mare in April or May would not have been successful. Appellants, however, do not direct this court to any finding—let alone any evidence—

7      Appellants' briefs are riddled with assertions unaccompanied by citations to the record. Their argument on compensatory damages is no exception.

11

that Vervaldee was impotent or that his semen was not available for artificial insemination procedures at Gallun Farms in April or May 2012. Instead, the evidence undermines Appellants' contention.

Grassi testified that the breeding program for Vervaldee was managed by Gallun Farms. Gregory Gallun, who operated Gallun Farms with his wife Nancy Gallun, testified that the quality of Vervaldee's sperm "fluctuate[d]." But, he further testified that Gallun Farms got Vervaldee "to a fairly reliable 1eve1 where we were able to at least breed mares on premises" even though it was more difficult to "create a pregnancy" with his frozen semen. Nancy Gallun testified that Vervaldee's semen was not amenable to being frozen so all breedings had to occur at Gallun Farms. Grassi testified that because of Vervaldee's medical condition, Gallun Farms could not collect his semen every day but it was never more than a week between collections. All of this testimony supports the proposition that Vervaldee could be successfully bred with mares, like the Mare, physically located at Gallun Farms—not the proposition advanced by Appellants that his semen was not viable during April and May of 2012.

Having reviewed the record, we conclude the district court's finding that breedings between the Mare and Vervaldee at Gallun Farms in April and May 2012 would have produced four viable embryos is amply

12

supported. The compensatory damages awarded by the district court were not based on speculation.

The district court's award of punitive damages to Appellees was based on the court's finding that Appellants acted with the requisite "evil mind" required under Arizona law. *See Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986) (en banc). This finding is not clearly erroneous in light of the evidence referenced by the district court showing Appellants "purposely created an after-the-fact false contract," filed documents with the American Horse Association falsely claiming they owned the Mare, and engaged in prior acts similar to those involving the Mare.

8. Appellants raise two issues we do not consider. The first involves Appellants' assertion that Appellees' conversion claim is barred by the applicable statute of limitations. The district court ruled this affirmative defense was waived because it was not adequately raised in Appellants' Answer or in their motion for summary judgment. Appellate review of this issue has been waived by Appellants' inadequate briefing. *See United States v. Alonso*, 48 F.3d 1536, 1544 (9th Cir. 1995).

Appellants also seek review of the district court's denial of their request for a jury trial. Appellants raised this issue for the first time in their corrected opening brief—a brief they were ordered to file by this court

because their original opening brief did not comply with Ninth Circuit Rule 28-2.8. Because this issue was not set out in Appellants' original nonconforming brief, it was not properly included in the corrected brief. Accordingly, we **grant** Appellees' motion to strike the argument.

**Appeal No. 20-16648**

In Appeal No. 20-16648, Appellants challenge the award of attorneys' fees to Appellees. Under Arizona law, a court may award attorneys' fees to "the successful party" in "any contested action arising out of a contract, express or implied." Ariz. Rev. Stat. § 12-341.01. Appellants argue attorneys' fees are not permissible here as a matter of law because Appellees did not prevail on their breach of contract claim. In *Marcus v. Fox*, 723 P.2d 682, 684-85 (Ariz. 1986) (en banc), the Arizona Supreme Court framed the appropriate test as whether a cause of action for tort could not have existed but for the existence of a contract. Under that test, the award of attorneys' fees in this matter was legally appropriate because Appellees' claims arose from the parties' contractual relationship even though Appellants did not breach the terms of the written contract. We further conclude there was no abuse of discretion in the district court's decision to award fees in this matter because there was no reversible error in the court's analysis of the relevant factors. *See Associated Indem. Corp. v.*

14

*Warner*, 694 P.2d 1181, 1184 (Ariz. 1985) (en banc). Nor have Appellants shown any reversible error in the amount of fees awarded except as discussed below.

According to Appellants, a portion of the attorneys' fee award included fees sought by Appellees' attorney Michael Carroll for work he performed in the Cains/Grassi suit.[8] Appellees do not dispute this assertion despite the presence of the following statement in the written declaration Mr. Carroll filed with the district court: "Those hours, fees and costs itemized and sought in this action do <u>not</u> include any fees (or costs) incurred in [the Cains/Grassi suit]." (emphasis in original). We remand this issue to the district court for a determination of whether there is any basis to award fees to Appellees for work performed by Mr. Carroll, or any other person, in the Cains/Grassi suit.

## Conclusion

The judgment in favor of Appellees in No. 19-16779 is **affirmed** with the exception of the judgment against Appellants for breach of fiduciary duty which is **reversed**. The award of compensatory and punitive damages to Appellees is **affirmed**. The award of attorneys' fees in No. 20-16648 is

---

[8] Appellants' Motion to take Judicial Notice of the docket in the Cains/Grassi suit is **granted**.

15

**affirmed** with the exception of fees awarded for work performed by any person in the Cains/Grassi suit. As to those fees, the matter is **remanded** for further proceedings. Appellees shall recover their costs in both appeals.